ORA KITCHEN v. SCHLUETER MANUFACTURING COMPANY, Appellant.— 20 S. W. (2d) 678.

Division One, October 14, 1929.

*Jones, Hocker, Sullivan & Angert* for appellant.

*Douglass & Inman* for respondent; *Hensley, Allen & Marsalek* of counsel.

LINDSAY, C.—The plaintiff, an employee of defendant, was injured while operating a punch press used to stamp sheets or plates of metal. The press was driven by electric power and was set in motion by the movement of a pedal. The design of the machine was that when the operator placed her foot upon the pedal, the upper die of the press would descend upon the metal to be stamped and then ascend, and would not again descend, except by fur-

ther movement of the pedal by the operator. The sheet of metal was to be removed by the operator after the upper die ascended. It is the claim of plaintiff that the machine repeated the descending movement while she was removing a sheet of metal, and did so without movement by her of the pedal to cause it to descend, and thereby, her hand was crushed between the dies. She had a verdict and judgment for $10,000 from which defendant has appealed. Defendant insists that the petition fails to state facts sufficient to constitute a cause of action; that defendant's demurrer to the evidence should have been sustained; that there was error in refusing certain instructions offered by defendant, error in admitting certain testimony over defendant's objection, and also in giving plaintiff's instructions numbered 1 and 2. It is further claimed that the verdict is excessive and the result of prejudice and passion.

At the term of court preceding the term at which the cause was tried, defendant filed its motion to make the petition more definite and certain. The motion was overruled, and defendant filed a term bill of exceptions. No demurrer to the petition was filed, nor was objection made to the introduction of evidence thereunder. Error is assigned upon the denial of the motion to make the petition more definite and certain. The petition, after certain preliminary allegations of the employment of plaintiff to operate the punch press, described the machine and its operation, and the occurrence of the injury to plaintiff as follows:

"That said machine upon which plaintiff was working was electrically driven and was put into operation by means of a foot pedal which the operator moved with her foot; that said machine was so constructed that when plaintiff would place her right foot on the pedal the traversing part of the machine would descend onto the die, cutting or crimping the tin that was placed in it; that the machine was so designed and intended that when the operator placed her foot upon said pedal the machine would make one operation, or the traversing part would descend and then ascend; that at the time plaintiff was injured as herein alleged she had placed her foot on the pedal, causing the machine to descend and then ascend; that when she reached in to remove said piece of tin which had been cut by the descending operation of the machine without any interference on her part and without moving the pedal to put the machine into operation, the traversing part suddenly descended upon plaintiff's hand, . . . " (setting out in some detail the nature of plaintiff's injury.) After describing the injuries, the petition contains the following allegation:

"Plaintiff further states that her said injuries were directly caused on account of the negligence of defendant."

1186

Defendant's motion to make the petition more definite and certain was a motion to make more definite and certain the allegation last aboved quoted, as being "too indefinite and uncertain to inform the defendant of the charge made against it, and to enable ît to prepare its defense herein." Defendant's answer was a general denial, followed by allegations that "plaintiff negligently placed her hand between the dies while same was in motion," and negligently attempted to remove material on which she was working by taking hold of the same with her hand, and negligently failed to use the tool, with which she was furnished to extract the stamped plate on which she was working; and that her said negligence caused, or contributed to cause, whatever injuries she sustained.

The reply was a general denial.

Defendant has assigned error in the overruling of its motion to make the petition more definite and certain. In the original brief that point was not strongly pressed. In a reply brief, defendant calls attention to the recent case of State ex rel. Hopkins v. Daues, 319 Mo. 733, 6 S. W. (2d) 893, which considered the main opinion and the concurring opinion in Kramer v. Power & Light Co., 311 Mo. 369. State ex rel. Hopkins v. Daues, supra, is cited as an authority for holding that the motion to make more definite and certain was not waived by answering over and going to trial. That it cannot be so considered is clearly ruled in the more recent case of State ex rel. Brancato v. Trimble, 322 Mo. 318, 18 S. W. (2d) 4, wherein the Court en Banc in an opinion by GANTT, J., considered the Kramer case and also State ex rel. Hopkins v. Daues, and prior cases ruled in both Divisions upon the question of waiver under the circumstances here existing. Under the holding in State ex rel. v. Trimble, we must rule that the assignment asserting error in the overruling of the motion to make more definite and certain, was waived by defendant, and the question of error in that respect is not before us upon this appeal.

Defendant insists that the petition entirely fails to state a cause of action, and therefore its total insufficiency may be availed of on appeal.

Counsel for respective parties have cited two lines of cases upon that question. Counsel for defendants in support of their contention that the petition does not state facts sufficient to constitute a cause of action either generally or under the doctrine of res ipsa loquitur, call attention to Sabol v. Cooperage Co., 313 Mo. l. c. 540; Meade v. Missouri Water & Steam Supply Co., 318 Mo. 350, 300 S. W. l. c. 516, 517; Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S. W. l. c. 770; Removich v. Construction Co., 264 Mo. l. c. 47, 49; Von Trebra v. Gas Light Co., 209 Mo. 648; Klebe v. Distilling Co., 207 Mo. l,

c. 489, 490; McGrath v. St. Louis Transit Co., 197 Mo. l. c. 104; Ash v. Printing Co., 199 S. W. l. c. 998, 999; Prapuolenis v. Construction Co., 279 Mo. l. c. 367; Halt v. Railroad, 279 S. W. 148; Wilt v. McCallum, 214 Mo. App. l. c. 333, 335.

Counsel for plaintiff call attention to Heckfuss v. Packing Co. (Mo. App.), 224 S. W. 99, and the same case in certiorari, State ex rel. Packing Co. v. Reynolds, 287 Mo. 697; Sullivan v. Railroad, 97 Mo. 113; Ash v. Printing Co., 199 S. W. 994; Eckhardt v. Manufacturing Co., 235 S. W. 117; Blanton v. Dold, 109 Mo. 64; Wyler v. Ratican, 150 Mo. App. 474; Dieter v. Zbaren, 81 Mo. App. 612; Quinley v. Traction Co., 180 Mo. App. 287; Davidson v. Railroad, 98 Mo. App. 142; Hill v. Railroad, 49 Mo. App. 520, 121 Mo. 477.

Counsel for defendant in their attack upon the sufficiency of the petition say that the petition pleads only the fact of the injury and the general conclusion that the injuries resulted from the negligence of the defendant; and further say that the allegation of such a conclusion tenders no issue of fact and should not be considered in determining the sufficiency of the petition. Under the last-mentioned contention they call attention in the original brief to Sabol v. Cooperage Co., 313 Mo. l. c. 542, and to Kramer v. Kansas City Light & Power Co., 311 Mo. l. c. 369. The statement of counsel as to what the petition contains falls short. It does more than merely to state that the plaintiff was injured, and that the injury resulted from the negligence of defendant. The petition cannot be understood otherwise than as alleging that plaintiff, as an employee of defendant, was operating a machine furnished by defendant. The significant allegation is made that the machine was designed and intended to make one operation—to cause the die to descend and ascend—and that it was so designed and intended as not again to descend unless caused to do so by the act of the operator, and that in this instance without the act or interference of the operator—without her again pressing the treadle—it did descend—a movement contrary to what the machine was designed and intended to do. The allegation of general negligence was, in effect, a charge that the condition of the machine, whereby it made the movement it was not designed to make, was due to the negligence of defendant. The petition does not assume to assert what caused that condition. If the nature of the occurrence, the unusual movement of the machine which produced the injury, was an occurrence of the kind giving rise to the presumption of negligence under the rule *res ipsa loquitur,* it was not necessary to charge the particulars wherein defendant was negligent, that is, the particular defect in the machine which caused it to repeat.

The sufficiency of the petition in Sabol v. Cooperage Co. is discussed with reference to whether it stated a cause of action under

the *res ipsa loquitur* doctrine, and many cases are cited in the opinion and discussed. The distinction between the instrumentality, and nature of the occurrence resulting in the injury in that case, from the instrumentality and nature of the occurrence in the instant case, is obvious. The same may be said of Removich v. Construction Co., supra, where the chain from which a bucket was suspended, broke, and caused the bucket to fall upon the plaintiff and injure him. The facts in that case are strongly similar to the facts in Klebe v. Distilling Co., supra. Counsel for defendant call attention to Meade v. Missouri Water & Steam Supply Co., 318 Mo. 350, 300 S. W. l. c. 517, in support of their contention that the petition is insufficient in that it does not show control of the instrumentality by defendant, and that plaintiff had nothing to do with the control of the machine. This particular ground of objection would have been reached by a demurrer to the petition, as in the Removich case. It is our conclusion that the petition in this case states a cause of action within the ruling and the reasons given in Blanton v. Dold, supra; Ash v. Printing Co., supra; Eckhardt v. Manufacturing Co., supra; Heckfuss v. Packing Co. (Mo. App.), 224 S. W. 99, and State ex rel. v. Reynolds, 287 Mo. 697, which must be held good after verdict. The petition in this case cannot be treated or construed upon the grounds applicable to a petition describing a simple instrumentality, and there is enough in it to show that here was a complicated mechanism of numerous parts, and that there was an unexpected automatic action of the machine, at a time when it should have remained at rest if it had obeyed the laws of its being, and operated as it was designed to operate.

Counsel for defendant say that this case is distinguishable from the case of Blanton v. Dold, supra, because in that case the plaintiff was not the operator of the machine, and that the court in that case expressly said "that the unexpected start of the mill is not ascribable to any movement of the rope in the mill room." And, further, that in that case the operator was not at the machine when the accident occurred. But, in the case at bar, the allegation is that the machine repeated without any act or interference on the part of plaintiff, and without her pressing the treadle again to cause the die to descend. The fact that this petition shows upon its face that plaintiff was the operator using the machine, and was herself the one to apply the power by means of the pedal, does not distinguish the case from the Blanton v. Dold case, when it is conceded, as it must be on demurrer, that although plaintiff was the operator, she did not in fact press the treadle, or by any act of hers set the machine again in motion.

Counsel would distinguish also Heckfuss v. American Packing Co., supra, from the instant case. They point out that it is shown by

the opinion in that case the petition there under consideration alleged "the said machine by reason of the negligence of defendant was suddenly and without warning or notice to the plaintiff started and caused to revolve," etc. They say there is no such allegation in this petition, but we do not believe such real distinction exists, because, the allegations as to what this machine was designed and intended to do, the further allegation as to what it did without interference by plaintiff, and without moving the pedal to put the machine in operation, is substantially equivalent to the allegation mentioned as made in the Heckfuss case.

Counsel also call attention to Ash v. Printing Co., supra, and that it appears in that case personal control of the machine by defendant, and personal knowledge of its workings by defendant, was charged, and ignorance of the machine on the part of plaintiff. As to this, it is again to be remembered that the defendant did not demur to the petition, and the petition must be held good after verdict as against that objection. Counsel for defendant further insist that the general allegation that plaintiff's said injuries were directly caused on account of negligence of defendant, is "a mere legal conclusion having no precedent allegations to support it," and cannot be considered in determining the sufficiency of the petition even after verdict. But, the petition does have the precedent allegation to which we have referred, alleging the occurrence of a movement which the machine was designed not to make except through the act of the plaintiff, and that plaintiff did no such act. The movement was one, which, upon the basis of probabilities and of human experience would not have been expected to occur, except by pressure upon the treadle. The facts shown in the evidence were that the plaintiff had no duty except to operate the machine, according to the instructions given her by defendant's foreman. We hold the petition to be sufficient after verdict, as a petition under the doctrine *res ipsa loquitur*, and as to negligence in respect to the unusual descent of the die, but not in respect to failure to guard the machine.

The defendant insists that the court erred in overruling defendant's demurrer offered at the close of plaintiff's case and at the close of the whole case. The contention is that there was no evidence to go to the jury on the theory that the machine repeated, and also that there was no allegation or evidence of a negligent failure on the part of defendant to guard the machine. The petition in no way makes mention of a failure to guard the machine safely.

The plaintiff was about twenty-one years of age at the time of her injury. Before that time she had worked upon machines similar to the one in question, but it does not appear that she had worked with this particular machine prior to the afternoon on which she

was injured. She testified that she was set to work on this machine at about two o'clock in the afternoon by defendant's foreman; that the foreman instructed her how to use the machine, and also told her that if any irregularity or trouble appeared in its operation to call him or one of the die-setters employed in the establishment by defendant. Her testimony was that she began work on the machine, and after a time there was a hitch or entanglement between the upper die and the guard; that the "upper die would catch on the guard," and that she told the foreman; that the foreman thereupon called Bill Curley, a die-setter; that Curley came and worked on the machine for a time and turned it back to her; that she resumed her work, and later the machine repeated—that is, the upper die descended when it should not have done so, and she called another die-setter, one Roy Smith, and he came and worked on the machine, and after doing so told her it was "all right," and she resumed work; that after she did so, the machine stamped the first two pieces of tin all right, but that after stamping the third piece, and when she started to take it out, the upper die came down on her hand. The plaintiff described the guard which she said was on the machine at the time of her injury. She said that the guard consisted of a couple of pieces of steel about one inch wide and an inch and a half long that went across the front of the machine, one at the top and one at the bottom, and they were bolted together. She said there was no wire netting on the guard. She described the operation of the machine: that by pressing the foot down upon the treadle,. the guard was released and it came down, and that the pressing down of the treadle caused the die to descend upon the metal to be stamped. The testimony of herself and of some others on that point, was, that in pressing the treadle the guard came down ahead of the die. The power which caused the die to descend was transmitted to the die from a fly wheel, driven by electricity, and running continuously while the work was going on. The releasing of the treadle disconnected the upper die from the fly wheel. The testimony also is to the effect that if the treadle was held down, the guard would stay down, but that the die would continue to descend and ascend. The plaintiff testified that the guard, when it came down, lacked about an inch and a half of coming down to the plate below. Testimony of a witness for plaintiff who examined the machine a short time before the trial, was, that the guard lacked two inches of coming down, and that "when it was all the way down it was three-quarters of an inch off of the die." One of plaintiff's witnesses testified that after plaintiff's injury the machine repeated, that is, the upper die descended contrary to what it was designed to do.

Defendant's foreman testified that the only thing which would cause the repeating operation, other than pressing down the treadle,

would be the breaking of the clutch, which applied, or disconnected, the movement of the fly wheel and the upper die. Defendant's testimony also was to the effect that examination of the machine after the accident to plaintiff, disclosed no defects in it. The defendant called Roy Smith, the die-setter heretofore mentioned. He testified that before the plaintiff began work on the machine he "set up" the die on the machine and tried it out; that it worked all right; that he instructed the plaintiff how to use the machine; that there was a certain tool or implement furnished by the defendant and used by the operator in withdrawing the plate which had been stamped; that he instructed her to use this tool in removing the stamped plate, and to keep her hands away from the die. Roy Smith testified that after plaintiff had been at work awhile, he was called to fix the guard and did so. He denied that he was called again by plaintiff to work on the machine.

Bill Curley, who plaintiff said, was called the first time to fix the machine when it showed a hitch of the guard and the die, was not produced as a witness by either party. Plaintiff's testimony was to the effect that the tool or appliance furnished her to use in extracting a plate after it was stamped, was not the same kind of tool which defendant on trial claimed had been furnished for that purpose. Her testimony was that the guard had to be up, to allow removal of the metal which had been stamped.

Pictures of the machine caused to be taken by defendant after the accident, and showing a guard, were put in evidence by the plaintiff. Some of these pictures showed a guard with a wire netting upon the guard; the others showed the guard as plaintiff described it. All of this testimony about the kind of guard and the way in which it operated, went in without objection. Plaintiff introduced a witness who testified to long experience and familiarity with the types of guards used on punch presses. He was asked whether or not in his opinion it was possible to safely and securely guard the machine in question, so that while it was in operation an employee's hand in the performance of duty could not get between the dies and at the same time not materially interfere with the operation of the machine. Defendant made the objection that the question of guarding was not material in the case. This objection was further put upon the ground that when plaintiff was injured she was removing a piece of material from the dies at which time the guard was up, and according to her testimony had to be up, and that the absence or presence of a guard could not in any way have affected or prevented the accident. Some of the testimony of this witness is obscure to us, but as we understand his statement as to the type of guard in use on the machine, the guard had "nothing to do with the press repeating." The witness testified that a guard of the

type in question can be made safe if it is set properly. The same witness under questions by plaintiff testified that there was on the market a guard in general use in cases where the operator was required to reach in between the dies. He testified that a guard of that character would remove a person's hand from between the dies, if the upper die should be moving, and would do so, if the movement of the die was abnormal, and would not interfere with the operation of the press. He was asked on cross-examination, whether that was a guard in general use. He answered: "That is a guard, yes, sir." He had said in his direct examination it was a guard which was in general use. Defendant's superintendent, described the operation of this machine, saying that "when you step on the pedal it releases the spring on the clutch and the clutch bolt engages in the fly wheel, naturally bringing the ram down with the speed of the fly wheel, and when you remove your foot it releases the clutch and the brake stops it at its upper stroke." He testified that the guard described by plaintiff's expert witness was not practical on the kind of machine the plaintiff was operating, and that the movement of that kind of a guard would injure the arm of the person operating the machine.

There is in the evidence no explanation of what caused the die to descend in the manner described by the plaintiff. There is no evidence that the clutch broke or was defective, or that the brake mentioned by defendant's superintendent was defective and failed to hold the die upon its ascending movement. There is no mention elsewhere in the evidence of the existence or function of a brake. There is evidence to go to the jury upon the question that the die descended in a manner unusual and different from what it was designed to do and of negligence on the part of defendant in that regard. If plaintiff's testimony be taken as true, the die descended or repeated the operation before the time when she was injured, and attention was called to it pursuant to the instructions given her, and the die-setter worked upon the machine and after doing so told plaintiff it was all right, and after her resumption of work it again repeated, causing the injury. Under plaintiff's testimony whatever the die-setter did in the way of inspection of the machine or of adjustment, was done at the direction of defendant, and on behalf of defendant, and was the act of defendant. If plaintiff's testimony be believed the movement of the die causing the injury was of that kind, which, according to common experience, does not usually occur except through some fault—lack of proper inspection and adjustment, or imperfection in the appliance. According to plaintiff's testimony, the defendant through its foreman and the die-setter to whom the foreman directed the plaintiff, had the duty of inspection, ascertainment of defects and correction of same. If the testimony be accepted as true, as it must

be under the demurrer, the nature of the accident, through the unusual descent of the die, of itself, carried a presumption of negligence on the part of the defendant, although the particular cause of the machine's repeating was not shown. The circumstances, the nature of the machine and the evidence that it was recently before the injury in the hands of the die-setter and adjusted by the die-setter, did not compel but did authorize the conclusion that the unexpected action of the machine was due to negligence on the part of the defendant.

The conflict in the testimony of defendant's superintendent and the testimony of plaintiff's witness, presented a jury question. Under the evidence it cannot be said that plaintiff was guilty of contributory negligence as a matter of law.

Looking to the evidence, we hold it was sufficient to submit the question of the negligence of defendant in failing to securely guard the machine; but, the petition did not charge a failure to guard, nor can we construe the petition to mean that the negligence charged therein, refers to negligence in failing to guard the machine. The court gave an instruction for plaintiff authorizing recovery on the theory that there was negligent failure on the part of defendant to safely guard the machine, and another instruction authorizing recovery on the theory that the die descended in an abnormal manner. Defendant offered withdrawal instructions as against both theories, which the court refused to give.

The petition set forth the physical causes resulting in plaintiff's injury, the design of the machine, with the allegation that it made a movement unusual and contrary to what it was designed to do, and made that movement without it being caused by any act of the plaintiff. The movement was the unusual descent of the die, or "transversing part of the machine," which injured plaintiff's hand. The allegation then is, that the said injury was directly caused by the negligence of defendant. The allegation of negligence is general in the sense that it does not specify a particular defect which caused the die to descend contrary to the design of the machine. But, the allegation of negligence was restricted in its application, in that, necessarily it referred only to the negligence which permitted the condition, whereby the die made the unusual movement. The negligence alleged in the petition could not be held to refer to a failure to securely guard the machine, because the precedent allegations contained no statement whatever concerning a guard. The purpose of the petition was to state a case based on common-law negligence; but, much of the evidence was devoted to an effort to make a case under the statute for failure to guard the machine. The testimony as to the kind of guard there was on the machine at the time of plaintiff's injury, and its insufficiency, and as to whether the guard on the machine was

such as plaintiff claimed, or was such an one as defendant claimed, went in without objection on the part of defendant. The testimony objected to by defendant was that part of the testimony of Ross, the expert, upon the question whether it was possible to securely guard the machine while it was in operation so that the operator's hand, while in the performance of the work, could not get between the dies, or, to provide such a guard as would protect the hand of the operator from going into the machine when operating the machine, either when in a normal condition, or, if it should repeat while she was operating it. This objection was overruled, and error is assigned thereon.

At the close of the case, after refusal of its general demurrer to the evidence, defendant asked the court to give Instruction C for defendant, withdrawing from the jury the issue of the failure to guard the machine. This instruction is as follows:

"The court instructs the jury that you cannot find for plaintiff in this case on the theory that the machine was not safely and adequately guarded, and the court, therefore, withdraws from your consideration that charge of negligence."

Refusing that instruction, the court gave plaintiff's Instruction 1 as follows:

"The court instructs the jury that under the law in this State it is the duty of an employer in manufacturing plants to safely and securely guard machines, including punch presses, when possible to do so, if dangerous to employees working thereat or thereabout unless safely and securely guarded, and that a failure to perform this duty by an employer would constitute negligence.

"Therefore, if you find from the evidence in this case that at the time mentioned in the evidence, plaintiff, in the performance of her duties as an employee of the defendant, was working at or about a punch press in defendant's place of business, and that the punch press had a guard on it; and, if you further find from the evidence that the guard on the punch press, if any, did not safely and securely guard said punch press, and that it was practical to safely and securely guard said punch press, if not so guarded, without materially interfering with the practical operation of said punch press, either with the guard on the punch press, if any, or by using another guard, if practical to use another guard, then the defendant was guilty of negligence; and, if you further find from the evidence that the plaintiff was injured as a direct result of such negligence, if negligent, on the part of the defendant, then your verdict will be for the plaintiff."

It was proper to refuse defendant's Instruction D as follows:

"The court instructs the jury that you cannot find for plaintiff in this case on the theory that the machine mentioned in the evi-

dence was defective, and the court, therefore, withdraws from your consideration that charge of negligence.''

Defendant's objection to plaintiff's Instruction 1 is based upon two contentions, first, that there was no evidence to support such an instruction, and next, that no such issue was made by the pleadings. Plaintiff's Instruction 1 authorizes a recovery upon an issue not within the pleadings, and upon a hypothesis or state of facts neither alleged specifically in the petition, nor within the general scope of the petition. In Black v. Metropolitan Street Railway, 217 Mo. 672, GRAVES, J., in a separate concurring opinion at page 685, said:

''I think instruction numbered 1 for the plaintiff is broader than the allegations of the petition, and in that is erroneous. However broad a scope the evidence in a case may take, and however proper an instruction would be (considered from the standpoint of the evidence introduced) as to having sufficient evidence to support it, yet if such instruction goes beyond the purview of the pleadings, it is nevertheless erroneous. In other words, a correct and proper instruction must be (1) an instruction based upon and authorized by the evidence, and (2) an instruction in no wise going beyond a purview of the pleadings. If in the trial of a cause the court permits the evidence to assume a broader scope than indicated by the petition, such does not authorize an instruction broader in terms than is the petition. 'A court does not possess the power to change by instruction the issues which the pleadings permit.' [Bank v. Murdock, 62 Mo. l. c. 73.]

''And an instruction is equally erroneous whether it enlarges or restricts the issues made by the pleadings. [Mansur v. Botts, 80 Mo. l. c. 658.]

''Of course, the petition might be amended so as to conform to the facts shown, and thus plaintiff would be able to reap the full benefit of his evidence, but such was not done in this case. The petition should have been amended to conform to the state of facts proven. [Budd v. Hoffheimer, 52 Mo. l. c. 303.]''

This language was quoted wth approval in Schumacher v. Breweries Co., 247 Mo. l. c. 162.

In State ex rel. v. Ellison, 270 Mo. 645, the same subject was discussed and earlier cases cited, and it was said l. c. 654:

''We announce again, as we have before, that instructions cannot be broader than the pleadings, however much latitude the course of the evidence may take. The issues to be covered are the issues (in the first instance) made by the pleadings. No instructions should be broader, as to issues, than the pleadings. If the evidence is not as broad and comprehensive as the issues made by the plead-

ings, then the instructions must be within the evidence and the pleadings, but cannot be broader than the evidence.

"In the instant case the evidence assumed a broader field than the pleadings. In such event the instructions must be limited to the issues raised by the pleadings. The instruction cannot follow the broad latitude of the evidence, and especially so when such evidence was objected to at the trial. But we need not rely upon an objection to irrelevant evidence. At most, the issues made by the pleadings are the only ones to be instructed upon, and even these issues may be lessened in number if the evidence offered does not cover all the issues made by the pleadings. In the instant case the instruction did go beyond and broaden the issues made by plaintiff's petition, and in this violated the rule announced by this court, and the opinion of the Court of Appeals likewise contravened our rule when it sustains the instruction."

The rule so stated in State ex rel. v. Ellison, was referred to with approval in Talbert v. Chicago, Rock Island & Pacific Ry., 314 Mo. l. c. 370. There was no request for an amendment of the petition. To say that the allegation of general negligence in the petition referred to failure to securely guard the machine, would be to hold that such general language operated to incorporate into the petition an additional and specific charge of negligence, independent of the cause of action founded upon the abnormal movement, pleaded under the doctrine of *res ipsa loquitur*.

Plaintiff's Instruction 2 allowed a recovery, by plaintiff, upon the ground and theory of her petition, but Instruction 1 allowed a recovery on a ground and theory not pleaded in the petition at all, and regardless of whether the jury found that the repeating movement of the die was attributable to negligence on the part of defendant. We think this must be so, because, under the statute (Sec. 6786, R. S. 1919) the employer might be convicted of negligence in failing to provide a guard to secure the safety of the employee working near or upon a dangerous machine, although the evidence as to the construction and care of the machine itself which inflicted the injury, did not convict the employer of negligence in respect to the construction, care and maintenance of such machine.

The jury may have given their verdict in this case wholly upon Instruction 1, a theory not pleaded by plaintiff.

Defendant complains of the giving of Instruction 2, first, under the claim that the evidence was not sufficient to submit that issue to the jury. From what we have already said as to the evidence, it follows this objection is overruled. The other objection made is, that by Instruction 1 plaintiff sought to recover upon evidence showing specific negligence for failure to guard, but that by Instruction 2 recovery was sought under the doctrine *res ipsa loquitur;*

and that plaintiff having offered evidence tending to establish specific negligence, and instructed thereon, cannot rely upon the doctrine of general negligence as contemplated by plaintiff's Instruction 2. The evidence as to a failure to guard the machine had no tendency to prove that the abnormal movement of the die was caused by negligence of defendant. Concededly it was the descent of the die which injured the plaintiff's hand. If it did so because of negligence of the defendant in its maintenance, and injured the plaintiff, then plaintiff had a cause of action irrespective of whether she availed herself of an alleged violation of the statutory duty of defendant to guard the machine. On the other hand, if there was a failure of the evidence to show that the descent of the die was attributable to any negligence of defendant, that did not of itself absolve defendant from the statutory duty to securely guard the machine. By her instructions plaintiff sought to take advantage of both theories, under a pleading which only advanced one theory. Since under our ruling there will probably be a retrial of the cause under an amended petition, we will not further discuss Instruction 2.

Defendant also complains of the refusal of its Instruction E. We will not lengthen this opinion by going into a discussion of alleged error in refusing defendant's Instruction E. It was asked in part on the theory that the plaintiff was entitled to go to the jury only on the issue of negligence in the sudden repeating of the machine. It was in substance covered by plaintiff's more general Instruction 6, as to the burden of proof. Our conclusion that no further discussion of these instructions should be indulged now, is based upon the assumption that the cause will be tried again upon pleadings which will adequately define the issues.

The judgment is reversed and the cause remanded. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.