B. C. LEIFERMAN, Respondent, v. ELDON WHITE and Samuel La Due, Copartners, Doing Business as White Ice Cream Factory, Appellants.

(168 N. W. 569.)

**Personal injuries — resulting from the handling of an electric light suspended by a cord — damages — action to recover — res ipsa loquitur — doctrine of — verdict — evidence to support.**

In an action for personal injuries alleged to have been sustained by reason of burns and an electric shock occasioned by the handling of an electric light suspended by a cord, the evidence is examined and *held* to present a proper case for the application of the doctrine of *res ipsa loquitur*, and that there was sufficient evidence to support the verdict of the jury in favor of the plaintiff.

Opinion filed May 25, 1918. Rehearing denied July 9, 1918.

Appeal from District Court, Ward County, *K. E. Leighton, J.* Affirmed.

*Palda & Aaker*, and *E. T. Burke*, for appellants.

NOTE.—As to whether the doctrine of *res ipsa loquitur* applies, to cast on the company the burden of negativing its negligence in the premises, where a company furnishing electricity for lighting purposes has installed wires and appliances to convey into a building electricity for domestic and lighting purposes, and one in such building taking hold of an incandescent lamp in a reasonably prudent manner, to turn on the light, is severely burned and shocked by an escape of electricity from the lamp or its connecting part, see notes in 22 L.R.A.(N.S.) 1183, and 32 L.R.A.(N.S.) 848, on applicability of rule *res ipsa loquitur* to accident on private property, due to escape of electricity from disordered electrical appliances.

On sufficiency of evidence of negligence of person injured by hand coming in contact with a defective insulated electric wire, see note in 100 Am. St. Rep. 524.

*Res ipsa loquitur,* if thoroughly understood and intelligently applied, is one of the wisest and most wholesome of legal doctrines. It much resembles the doctrine of circumstantial evidence in criminal cases. If a man is found dead near a damaged wire carrying death dealing voltage of electricity, it may well be presumed, in the absence of an eyewitness, that he was killed through the negligence of the electric company. Houston v. Tractor Co. 155 N. C. 4.

But the fact of the damaged wire, or overcharge of electricity is just as much a part of the proof required as is the fact of the accident itself. Western Coal Co. v. Garner, 22 L.R.A.(N.S.) 1183.

In all such cases the plaintiff is required to show defective electrical appliances in addition to proof of the accident. Ibid. Fitzgerald v. Southern R. Co. 6 L.R.A.(N.S.) 337, 361, note; Colfax v. Harter (Iowa) 100 N. W. 508.

Circumstantial evidence or *res ipsa loquitur* cannot speak anything that the circumstances themselves do not show. If the circumstances show an accident, and also defective apparatus, negligence upon the part of the person whose duty it is to maintain the same is presumed. Hoffman v. Power Co. 91 Kan. 450.

*E. R. Sinkler,* and *M. O. Eide,* for respondent.

The question as to whether the electric light from which plaintiff received the injury was in the same condition when examined by the experts as when plaintiff was injured, or whether in the meantime it had been tampered with, was one for the jury. Boyd v. Portland Electric Co. 66 Pac. 578.

We can eliminate all direct evidence of negligence and still have sufficient facts and circumstances to warrant the jury in finding negligence on the part of defendant and to sustain the verdict, under the doctrine of *res ipsa loquitur.* The facts and circumstances point conclusively to negligence. This whole question was one for the jury, and the jury having found negligence, even though such finding may be based upon circumstantial evidence alone, such finding ought not to be disturbed. Especially is this true where, as in this case, the defendant put witnesses upon the stand and offered proof to overcome the presumption of negligence. Boyd v. Portland Electric Co. 66 Pac. 528; Uggla v. West End R. Co. 39 Am. St. Rep. 481; Winkelman v. Kansas City Electric Light Co. 83 S. W. 99.

In case of injury where the agency causing the injury is under the control of the defendant, and the injury is such as in the ordinary course of things would not have occurred if the defendant had exercised proper care, the rule of *res ipsa loquitur* applies. Fitzgerald v. Southern R. Co. 6 L.R.A.(N.S.) 361, note; Western Coal Co. v. Garner, 22 L.R.A.(N.S.) 1183 note; 9 R. C. L. (electricity) 30; Alabama v. Appleton, 26 Ann. Cas. 1184, note; Alexander v. Nanticoke Light Co. 17 Am. Neg. Rep. 354, note; Denver Com. Elec. Co. v. Simpson, 31 L.R.A. 566; Harter v. Colfax Electric Light Co. 100 N. W. 508; Gilbert v. Duluth General Electric Co. 100 N. W. 654; Phelan v. Louisville Electric Co. 6 L.R.A.(N.S.) 460; Turner v. So. Power Co. 32 L.R.A.(N.S.) 852; Delahunt v. United Tel. Co. 20 Am. Neg. Rep. 727; Hebert v. Lake Charles Ice Co. 100 Am. St. Rep. 524, note; Denver Com. Ele. Co. v. Lawrence, 73 Pac. 41.

BIRDZELL, J. This is a personal injury action and comes to this court upon an appeal from a judgment in favor of the plaintiff and from an order denying a motion for a new trial, or, in the alternative, for a judgment notwithstanding the verdict. The facts are as follows: The plaintiff, at the time of the injury complained of, was employed by the defendants, who conducted a confectionery business and ice cream factory at Minot, as copartners under the name of White Ice Cream Factory. On the 8th day of May, 1915, the defendants directed the plaintiff to sort potatoes which were situated in the basement of the building occupied by them. The basement was lighted by means of electric lights suspended from the ceiling by cords. While there is some conflict in the testimony relative to the directions given to the plaintiff by White, it appears either that the plaintiff was directed not to touch the light that was suspended on a long cord, or that he was directed to be careful not to break the light. The plaintiff went to work sorting the potatoes about 1 o'clock in the afternoon, and after he had been at work a short while, one Davy, a foreman having direct supervision over plaintiff's work, heard an outcry from the basement and was the first to go down to determine what the trouble was. He found the plaintiff lying against the wall, with blood running down his face from a wound over his eye. When found by Davy, the plaintiff had the electric light globe and wire in his hands. In falling, he

had torn the wire from the fixture in the ceiling. Davy, with the aid of another employee, Lowe, who had been called to assist, helped the plaintiff up and put water on him to revive him. Plaintiff claims to have received an injury on the hand, in the nature of a burn, and a cut over one of his eyes. He sought medical attention at once, and later, on the same afternoon, went back to work. His testimony shows, however, that, by reason of the shock and the injuries received, he was unable to work for considerable time after the day of the accident. There was no direct evidence going to show any negligence on the part of the defendants in connection with the electric wiring or with the character of the current used in the building. There is some testimony, however, going to prove an admission on the part of Davy, the foreman, to the effect that he had some knowledge of a dangerous condition of the wiring. The testimony referred to is that of one George Prem, who testified that on the day plaintiff was hurt he was in White's store and heard Davy say in substance that "if the thing (meaning the wire cord) had not been pulled out of the ceiling, Lieferman would have been killed," and that, "when he heard Lieferman holler, he knew what was the matter and went and turned off the switch." In addition to this testimony there is evidence given by expert witnesses called by the defendants, to the effect that electric appliances such as those in question, in approved condition with perfect insulation, can be handled without giving a shock to a person taking hold of the bulb; further, that all of the wiring and the socket were inspected and found to be perfect and the insulation found to be perfect; also that the socket was of standard make and of a kind that was in general use. The jury returned a verdict in favor of the plaintiff for $750, upon which judgment was entered.

Error is predicated upon the refusal of the trial court to grant defendants' motion for a directed verdict at the close of the plaintiff's case, and upon the denial of the motion for judgment notwithstanding the verdict, or for a new trial. Upon this appeal it is contended by the appellants: First, that the evidence is insufficient to show that the plaintiff sustained any injury; second, that, if injured, the injury was occasioned by a risk assumed by the plaintiff as being incident to his employment; third, that plaintiff was guilty of contributory negligence;

and, fourth, that the evidence shows no negligence on the part of the defendants.

The first three contentions are so lightly treated in the brief of the appellants that we can scarcely regard them as being seriously urged upon this appeal. Furthermore, an examination of the record shows that, so far as these contentions are concerned, there was undoubtedly ample evidence upon which to submit the case to the jury. All of the evidence, however, going to establish the plaintiff's version of the case upon these matters, was disputed, and the defendants attempted upon the trial to discredit a large part, if not all, of it by impeachment. But this attempt resulted in creating issues as to the credibility of witnesses, which could only be decided by the jury. The verdict of the jury having been against the defendants, it must be assumed that the attempt to discredit the plaintiff's witnesses upon these matters failed.

The appellants support the fourth contention by a well-considered argument, which merits the serious attention of this court. The chief argument is that, as the plaintiff has introduced no direct testimony going to establish negligence on the part of the defendants, there is no issue to be presented to the jury. On the other hand, the respondent contends that, having shown the circumstances surrounding the accident, chief of which was the finding of the plaintiff in a dazed, stupefied, or unconscious condition, with the electric appliances in his hands which had been torn loose from the fixture, and with a burn on his arm and a cut over one eye, a situation was presented justifying an inference of negligence by the jury. In short, it is contended that, according to the doctrine of *res ipsa loquitur,* it became incumbent upon the defendants to establish that they had exercised that degree of care in the fulfilment of their duties to the plaintiff which would excuse them from any responsibility for his injuries. We cannot adopt the limited application of the doctrine of *res ipsa loquitur* for which the appellants contend. The appliance in question was shown to have been under the control of the defendants, and the accident was such as would not have happened in the ordinary course of events had proper care been used. It is in just such circumstances that the law allows the jury to draw the inference of fact that the defendant was negligent. If the circumstances afford a reasonable explanation and one wholly consistent with the exercise of due care on the part of the defendant the eviden-

tiary value of the circumstances themselves as proof of negligence would be lessened. As we understand the doctrine of *res ipsa loquitur,* it merely permits the jury to draw upon their experience in determining whether or not a given set of circumstances is consistent with the exercise of reasonable care on the part of the defendant. It takes the circumstances themselves as evidence of negligence, because it is reasonable to do so. Surely there can be nothing unreasonable in allowing the facts surrounding the accident in question to be weighed by the jury as circumstantial evidence of negligence on the part of the defendant. This is all that is accomplished by the doctrine of *res ipsa loquitur.* If any doubt existed upon this point in the instant case, it would be largely dispelled by taking into consideration the testimony of the defendants' own expert witnesses.

The witness McGuire testified as follows:

Q. If a bulb is defective or if the insulation is defective in an electric light, a man may receive an electric shock?

A. It is possible if it is defective. . . .

Q. Is it not a fact that persons have received shocks while the light was burning? Turning it on?

A. Not from perfect insulation. . . .

A. I said he would not receive a shock if the insulation were perfect.

Q. If it is imperfect, would he?

A. Yes.

The testimony of the expert witness Nelson is substantially to the same effect. There can be no doubt that, from the evidence descriptive of the accident itself, a jury would be warranted in finding that the accident was occasioned by an electric shock received by the plaintiff while handling an appliance which, in ordinary circumstances, would not have been sufficiently dangerous to occasion any injury; and when these circumstances are viewed in the light of the expert testimony, it cannot be said that the jury was unwarranted in inferring that something was wrong, with either the current or the appliance. The testimony of the defendants' own witnesses goes far to establish that the defect, if any existed, was in the appliance; since it was shown by them

that perfect insulation would have prevented one handling the appliance from receiving a shock. The witness McGuire also testified that a current of 110 volts, which is that ordinarily used in lighting a building of this character, is what was supplied to the building in question. True, defendants' evidence goes further to establish that the wire and socket found in the hands of the plaintiff were perfect in their insulation; but it appears that several weeks elapsed between the time of the accident and the inspection of the wire and socket used as an exhibit in this case, and that they were in the control of the defendants during all of the time. As a general proposition, the credibility of an explanation offered to rebut a prima facie case afforded by an accident of this character is a question for the jury. Curtis, Electricity, § 592. We are aware of no principle that requires the restriction of the doctrine of *res ipsa loquitur* to an extent which would preclude its application to a situation such as is presented in the instant case. On the contrary, we regard the principle as clearly applicable. Curtis, Electricity, § 597.

One of the principal cases relied upon by the appellants is that of Harter v. Colfax Electric Light & P. Co. 124 Iowa, 500, 100 N. W. 508, where it was said by the court: "The maxim, *Res ipsa loquitur,* does not apply to such a case as this, for there is no evidence that the accident was due to a dangerous current knowingly or even negligently sent into the hotel by the defendant company." But an examination of that case discloses that it is not an authority for such a limited application of the doctrine as the appellants contend for. The action in that case was against the power company which supplied the current; the wiring was in control of another and had been done by an independent agent; and the injury was occasioned primarily by the negligence of the person who had wired the premises, in fastening the wires so insecurely that they fell upon the plaintiff. Manifestly, under such circumstances, the jury would not be warranted in inferring negligence on the part of the defendants from the bare facts descriptive of the accident.

As we view the record in this case, it cannot be said as a matter of law that the jury was not warranted, under all of the evidence, in find-

ing that the plaintiff's injuries were caused by the negligence of the defendants.

Finding no error in the record, the judgment of the District Court is affirmed.

CHRISTIANSON, J. (dissenting). I dissent. In my opinion the doctrine of *res ipsa loquitur* has no application in this case. This doctrine is not one of substantive law, but is a rule of evidence. In all cases the party who seeks to recover damages for injuries occasioned by the negligence of another must show that the injury is more naturally to be attributed to the negligence of the defendant than to any other cause. The doctrine, *res ipsa loquitur,* does not dispense with this rule. It merely determines the mode of proving, or what shall constitute prima facie evidence of, negligence. The phrase, *res ipsa loquitur,* means literally that "the thing itself speaks," or "the thing speaks for itself." As applied by the courts, the doctrine designated by the phrase means that the very occurrence of the accident, under the circumstances shown in proving the accident itself, imports negligence. In other words that, from the facts and circumstances proved with respect to the occurrence of the accident, reasonable men may infer that it was occasioned by reason of the negligence of the party sought to be charged.

"The 'res' in the maxim, *Res ipsa loquitur,* is not simply an accident resulting in injury, but the accident and the surrounding circumstances, and the doctrine does not permit a recovery without some proof of negligence, but, if the occurrence was such that it could not have happened without negligence according to the ordinary experience of mankind, the doctrine is applied, though the precise omission or act of negligence is not specified." Robinson v. Consolidated Gas Co. 194 N. Y. 37, 28 L.R.A.(N.S.) 586, 86 N. E. 806.

"The ordinary application of the maxim is limited to cases of an absolute duty, or an obligation practically amounting to that of an insurer. Cases not coming under one or both of these heads must be those in which the circumstances are free from dispute, and show not only that they were under the exclusive control of the defendant, but that in the ordinary course of experience no such result follows as that complained of. It is sometimes said that the mere happening of an accident in this class of cases raises a presumption of negligence, but

this is hardly accurate. Negligence is never presumed. If it were, it would be the duty of the court, in the absence of exculpatory evidence by the defendant, to direct a verdict for the plaintiff, whereas in these cases the question is for the jury. The accurate statement of the law is not that negligence is presumed, but that the circumstances amount to evidence from which it may be inferred by the jury." Minneapolis General Electric Co. v. Cronon, 20 L.R.A. (N.S.) 816, 92 C. C. A. 345, 166 Fed. 659.

The doctrine was defined by Erle, Ch. J., in giving his judgment in a noted case, thus: "Where the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." Scott v. London & St. K. Docks Co. 3 Hurlst & C. 596, 159 Eng. Reprint, 665.

"This definition," says Thompson (1 Thomp. Neg. § 15), "has met with such general approval at the hands of judges in subsequent cases that it has become, so to speak, a legal classic. The meaning is not that the mere happening of an accidental injury is, of itself and in the abstract, presumptive evidence of negligence; it is that, in the numerous cases which fall within the above definition of the principle, the fact of the accident, when viewed in connection with the circumstances under which it took place, tends to demonstrate negligence, subject to explanation."

The maxim sprang into existence by reason of the vast increase in modern times of the use of powerful machinery, harmless in normal operation, but capable of serious human injury if not constructed or managed in a certain mode. Wyldes v. Patterson, 31 N. D. 282, 316, 153 N. W. 630. The particular force and justice of the doctrine, regarded as a rule throwing upon the party charged with negligence the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him, but inaccessible to the injured person. Wigmore, Ev. § 2509. Professor Wigmore, in discussing the doctrine and its application, advances the following considerations that ought to limit its application: (1) The apparatus must be such that in ordinary in-

stances no injury is to be expected, unless from a careless construction,. inspection, or user; (2) both inspection and user must have been at the time of the injury in the control of the party charged; (3) the injurious occurrence or condition must have happened irrespective of any voluntary action at the time of the party injured. Wigmore, Ev. § 2509.

The application of the doctrine depends upon the facts and circumstances of each individual case. It cannot be invoked between employer and employee, unless it appears from the circumstances attending the accident that except for some negligence of the master, either of omission or commission, the accident could not have happened. Feingold v. Ocean S. S. Co. 61 Misc. 638, 113 N. Y. Supp. 1020. See also Cederberg v. Minnesota St. P. & S. Ste. M. R. Co. 101 Minn. 100, 111 N. W. 955.

In applying the doctrine against an electric light company, when a person was injured while adjusting an electric light in his residence,. by an electric shock transmitted from outside wires entirely without fault on his part and in a manner which would not have happened if the wires had been in proper condition, the United States Supreme Court stated the doctrine of *res ipsa loquitur* thus: "When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care." San Juan Light & Transit Co. v. Requena, 224 U. S. 89, 56 L. ed. 680, 32 Sup. Ct. Rep. 399.

Bearing these principles in mind, it is difficult to understand how the doctrine can be said to have any application in the case at bar. It is not contended that the electric light involved in this case was either installed or operated by the defendant. On the contrary, it appears from the record that it was connected with and lighted by current furnished by the Electric Light Company which operates the lighting system of the city of Minot. It was an ordinary electric light,—such as was installed in the various homes and business places in the city of Minot, and for that matter generally throughout the state and country. The defendants maintain a small ice cream factory. They

had some potatoes in the basement. The plaintiff was engaged to sort these potatoes. Some conversation was had with respect to the light. He was either directed not to touch it, or else to be careful not to break it. There is no contention that he was ordered to move it. He endeavored to do so, however, and it was while attempting to do so that he was injured.

The defendants were bound to exercise due care in protecting their employee from injury. What constitutes due care is to be "estimated on a consideration of the facts of each particular case." It is such care as reasonable and prudent men would use under the same or similar circumstances. Conversely, the defendants, as masters, were not required to exercise any higher standard of diligence or skill than that which a reasonably prudent and careful man may be supposed to exercise under the circumstances. Labatt, Mast. & S. §§ 906, 907.

The work in which plaintiff was engaged was certainly not peculiarly dangerous. It is such work as might be performed in the cellar or basement of almost any farmhouse and in many, if not most, homes in the cities of this state. If it is true that the very happening of the accident in the case at bar imports negligence, then it is equally true that the happening of a similar accident in any home imports negligence. Either there is a duty incumbent to have electric lights tested, or there is not. Will it be contended that this is a practice or custom followed by persons of ordinary prudence and care, or even by persons of extraordinary prudence and care? I think not. I am firmly of the opinion that the doctrine of *res ipsa loquitur* has no proper application in this case.