LEO NELSON, Appellant, v. C. HEINZ STOVE COMPANY.—8 S. W. (2d) 918.

Division One, July 3, 1928.

*Everett J. Hullverson, Mark D. Eagleton* and *James A. Waechter* for appellant.

*Banister, Leonard, Sibley & McRoberts* and *Frank P. Aschemeyer* for respondent.

ATWOOD, J.—Appellant, Leo Nelson, while an employee of the C. Heinz Stove Company, respondent, and operating a No. 73 Swain power press, sustained injuries to both hands. In an action for damages the jury returned a verdict for defendant, upon which judgment was entered, and plaintiff thereupon appealed, assigning error in the giving of instructions.

The record discloses that the power press was about five or six feet high, three or four feet wide, and about three feet in depth. It functioned by means of two dies, a lower die being at rest in the bed of the machine, and an upper die which ascended and descended. The material to be pressed was placed over the lower die and the machine then being put in operation the upper die descended and the material was pressed between the two dies. The power for the operation of the press was transmitted from a line shaft by means of a belt to a pulley which was placed on a shaft at the upper right hand portion of the press. The power was applied and released by means of a clutch that operated upon the application of a foot pedal at the lower right portion of the machine. On either side of the bed of the press there was a button, and in order to put the press in operation it was necessary for the operator, who stood in front of the press, to press both of these buttons, one with the left hand and the other with the right, and then press down the foot lever at the lower right side of the press, which, after application, engaged the clutch and set the upper die in motion. The

foot lever could not be pressed and the clutch engaged until both of these buttons had been pressed, but after the clutch lever had been released by application of the buttons and the clutch had been engaged by a pressure upon the foot lever, the upper die continued in operation as long as the operator held his foot on the pedal. The buttons were in the nature of a safety device, and were placed on the machine for the purpose of safeguarding the operator, it being obvious that since the operator had to use both hands in pressing the buttons before the machine could be put in operation it was impossible for him to have them in a position of danger when the upper die descended. The plaintiff testified that the foreman instructed him how to operate the machine, and explained the purpose of the safety buttons. He also said that he had operated this type of machine before and knew how it worked.

Plaintiff's petition alleged "that while plaintiff was so engaged in working with and using said machine, in the normal and usual manner, with the aforesaid die motionless and at rest, the said upper die did then and there suddenly, unexpectedly and in an extremely unusual manner, and without said foot lever being moved or pressed, and without said buttons being pressed, and while plaintiff's fingers of both hands were under the said upper die, descend with great rapidity and force as a direct and proximate result of negligence and carelessness of defendant, and struck, caught, cut, crushed and mashed plaintiff's said hands and fingers, directly causing the injuries hereinafter alleged; that plaintiff does not know the cause or causes that operated to bring about the aforesaid extraordinary action of said machine, but that said extraordinary action thereof was not caused by negligence of plaintiff, and that said machine and all information pertaining thereto then was and now is in the possession of defendant." Defendant's answer was a general denial.

Plaintiff testified that at the time he was injured he was punching metal for the top of stoves, each piece of material requiring two operations; that after he had completed one operation on the piece before him, and while the upper die was at rest, the machine suddenly started without his having pressed the safety buttons or pressed on the foot lever which engaged the clutch, and that his hands were caught by the upper die as it descended. He also testified that the machine had never repeated before, and that, as far as he knew. it was in perfect running condition. Three witnesses on behalf of the defendant testified that the machine had never repeated before the time when plaintiff was injured and that immediately after the accident the machine was thoroughly inspected and found to be in perfect running condition, without any loose, worn or defective parts. The defendant's foreman testified that he inspected the machine

every morning and during the day whenever he had time, and made such adjustments as were found necessary from time to time, and that the adjustment he made immediately before plaintiff was injured would not have caused the machine to repeat. Defendant's vice-president and general manager also testified that on the way to the hospital plaintiff told him that he didn't know how the accident happened, that he just got caught in the press. The vice-president further testified that he then asked plaintiff if he kept his foot on the lever too long, and his reply was: "I don't know; I might have." On rebuttal plaintiff denied that he ever had any conversation with this witness about the accident.

The pleadings and proof thus presented clear-cut issues of fact as to whether or not the machine actually repeated, and whether or not plaintiff was injured in the manner he claims to have been injured. Plaintiff requested no instructions save one on the measure of damages which was given. Twelve instructions requested by defendant were given, and appellant assigns error in the giving of each of them. Instruction number 3 is the first one attacked in appellant's brief. It is as follows:

"The burden of proof is on the plaintiff to establish by a preponderance of the evidence the facts necessary to a verdict in his favor.

"By the terms 'burden of proof' and 'preponderance of the evidence' the court intends no reference to the number of witnesses testifying concerning any fact, or upon any issue in the case, but simply uses those terms by way of briefly expressing the rule of law, which is that unless the evidence (as to such issue) appears in your judgment to preponderate, in respect to its credibility, in favor of the party to this action on whom the burden of proof (as to such issue) rests, then you should find against such party on said issue."

Appellant says that this is a *res ipsa loquitur* case, that in such cases a presumption of negligence on the part of defendant arises, and that it is error to instruct the jury that no such presumption exists. Thus far we agree. But we think a bare reading of this instruction discloses, and appellant in brief virtually concedes, that it does not tell the jury that no such presumption exists. We do not even think that the instruction was misleading. Conceding that under the pleadings and proof this was a *res ipsa loquitur* case and that the doctrine of presumptive negligence on the part of defendant applied, it cannot be said that plaintiff did not have the burden of proving in the first instance a state of facts from which the presumption would arise that defendant was negligent. [Bond v. Ry. Co., 288 S. W. (Mo. Sup. Ct.) l. c. 782.] Proof of such facts by a preponderance of the credible evidence was "necessary to a verdict in

his favor." Clearly these were the facts and this was the burden to which the instruction referred. If counsel for plaintiff were fearful that the jury might be misled by the language used in this or any other instruction given, they should have asked an instruction defining their own theory of law on the subject. [Maloney v. United Railways Co., 237 S. W. 509.] They declined to do this and now complain. We have repeatedly condemned such practice. [Eversole v. Railroad, 249 Mo. 1. c. 529; Powell v. Railroad, 255 Mo. 1. c. 457.] This instruction would have been consistent with any proper instruction as to plaintiff's theory of the law. If, because of the absence of such an instruction, this one stands out with more distinctness and force than plaintiff would like, can the trial court be convicted of reversible error? We think not. The instructions held properly refused in Carlson v. Wells, 276 S. W. (Mo. Sup.) 26, and in Stofer v. Dunham, 208 S. W. (K. C. Ct. App.) 641, cases cited by appellant, contained objectionable matter not appearing in this instruction.

Appellant also says that instruction number 3 was erroneous because the second paragraph told the jury that the burden of proof and preponderance of the evidence has no relation to the number of witnesses testifying concerning any fact. It may be conceded that this is technically erroneous, but we have not been referred to any case holding that it constitutes reversible error. [Peppers v. Ry. Co., 295 S. W. 757.] Furthermore, in view of the fact that plaintiff alone testified in his behalf as to the facts connected with his injury, which were more or less contradicted by the testimony of three of defendant's witnesses, it is apparent that the error of this instruction was in favor of appellant and against respondent. Of such error appellant will not be heard to complain.

Appellant insists that instruction number 4 ignores the doctrine of presumptive negligence, casts the burden of proving negligence upon plaintiff, and therefore, the judgment should be reversed. This instruction is as follows:

"The charge in this case is one of negligence, the plaintiff, Leo Nelson, claiming that the defendant, C. Heinz Stove Company, was negligent, and that he was injured as a result thereof. In this connection the court instructs you that if you find and believe from the evidence that defendant was not guilty of negligence in any respect in connection with the maintenance, operation and control of the machine mentioned in the evidence, the plaintiff is not entitled to recover and your verdict must be in favor of the defendant.

"By the term 'negligence' is meant the failure to use such care as a man of ordinary prudence would use under the same or similar circumstances."

Bloom v. Union Electric L. & P. Co., 251 S. W. (St. L. Ct. of App.) l. c. 414, and Nagel v. Rys. Co., 169 Mo. App. l. c. 291, are cited in support of appellant's criticism, but they are clearly not in point, because the defendant in neither case offered any evidence to show that it was not negligent. In the instant case defendant placed witnesses on. the stand who knew the condition of the machine both before and after the injury occurred. Plaintiff was given the opportunity to cross-examine those who were in possession of such knowledge as the defendant had as to this machine, and the character and weight of their testimony went to the very issue of whether or not the machine actually repeated. Such testimony not only tended to contradict the allegations of fact upon which presumptive negligence in the case would have to rest, but tended to show that even if the machine did repeat the injury resulted from no negligence of defendant. When the facts' appear presumptions disappear. It would have been error to ignore such evidence by refusing defendant the right to a proper instruction thereon. What we have already said as to plaintiff's failure to ask an instruction on his theory of the case applies with equal force here. We find no reversible error in the giving of this instruction.

Appellant also assigns error in the giving of instruction number five which reads as follows:

"The court instructs you that if you find and believe from the evidence that whatever injuries, if any, were sustained by plaintiff on  the occasion mentioned in the evidence, were caused by the usual and ordinary risks and dangers, if any, necessarily incident to the work and employment in which plaintiff was engaged, which were obvious and known to the plaintiff, or by the exercise of ordinary care on his part could have been known to him, if you so find, then by accepting and continuing in the employment plaintiff assumed the risk of such injury and is not entitled to recover, and your verdict must be for the defendant."

Appellant's chief criticism is leveled at the form of this instruction because it does not specifically except risks and dangers arising out of the negligence of the defendant. As we read and understand the language it never included such risks and dangers, and therefore it was not necessary to exclude them by exception. Risks and dangers "*necessarily* incident to the work and employment in which plaintiff was engaged" mean those that cannot be avoided even by the highest degree of care. [Reickert v. Hammond Packing Co., 136 Mo. App. l. c. 570.] Those arising out of the master's negligence are

clearly not included. It is also contended that the evidence in this case did not warrant an instruction on assumption of risk. As we have already indicated, there was substantial evidence from which the jury could have found that plaintiff's injuries were the result of something other than the negligence of defendant. The trial court did not commit reversible error in giving this instruction.

Appellant also says there was no basis under the pleadings or proof for the giving of instruction number 6, which is as follows:

"The court instructs the jury that under the law in this State an employer is not required to guard against the happening of accidents which an ordinarily prudent person could not anticipate; therefore, if you find and believe that the plaintiff was injured in such a manner that such injuries could not have been reasonably anticipated by an ordinarily prudent person, then defendant is not liable and your verdict must be for defendant."

It is a fundamental principle in the law of negligence that a person is not required to anticipate or guard against an occurrence which an ordinarily prudent and careful person could not have reasonably anticipated. In this case defendant introduced substantial evidence tending to show the exercise of due care on its part, also tending to show that the machine did not repeat. Even if the machine did repeat, as plaintiff alleged and sought to show, yet the jury would have been justified in finding from the whole evidence that this unusual occurrence resulted from an unknown cause or one that defendant could not have reasonably anticipated or guarded against. The cases cited by appellant are not in point. In Crowell v. St. Louis Screw Co., 293 S. W. (St. L. Ct. App.) l. c. 523, there was no evidence indicating that the event happened from an unknown cause. The instruction considered in Zeis v. Brewing Assn., 205 Mo. l. c. 650, was an accident instruction pure and simple, ignoring all the evidence introduced by defendant. In Craig v. United Rys. Co., 185 S. W. (Mo. Sup.) l. c. 207, and in Lamar v. Morton Salt Co., 242 S. W. (St. L. Ct. of App.) l. c. 690, the defendants made no effort to explain the occurrences or to show due care on their part. The instruction given in this case was fully justified by the pleadings and evidence.

Appellant finally says that all of defendant's instructions "taken together constituted error." We have carefully considered them, separately and collectively, and find this sweeping criticism also without merit.

Finding no reversible error in the matters complained of, the judgment should be and the same is affirmed. All concur.