SAM GORDON v. MUEHLING PACKING COMPANY, Appellant.—40 S. W. (2d) · 693.

Division One, June 24, 1931.

*Jones, Hocker, Sullivan & Angert* for appellant.

126

*Banister, Leonard, Sibley & McRoberts* and *Frank P. Aschemeyer* for respondent.

128

STURGIS, C.—This case is here on defendant's appeal from a jury verdict and court judgment in plaintiff's favor in a damage suit for personal injuries. Plaintiff's injuries arose from his hand being caught and mashed in a sausage-grinding machine, which he was operating in defendant's meat packing plant in a suburb of St. Louis. There is no question as to the fact or manner of plaintiff's injuries. While the action is based on defendant's negligence, the petition is framed and trial was had on the doctrine of *res ipsa loquitur* rather than on specific negligence.

The petition alleges, the evidence supports, and plaintiff's principal instruction is based on these general allegations and facts:

The defendant maintained and operated a meat packing plant and therein and as part thereof maintained and operated a sausage grinding machine, which plaintiff was employed in operating. This sausage-grinding machine was operated by electrical power in grinding meat into sausage and other products, and consisted in the main of a hopper into which the meat was placed and from thence passed into a "worm" or "snake" shaped like a screw and revolving horizontally at the bottom of the hopper, and which carried and forced the meat through a "plate" and revolving knives which cut and ground it into sausage. The electrical power which turned this worm or screw and the other machinery was turned on or off by means of two buttons placed on the front of the machine. The power was turned on and the machine started to grinding by pressing the black button, and was stopped by pressing the red button. When the machine was in good order and properly operating, the worm, when stopped and standing still, would not start to revolve except on pressing the black button. When it was necessary, as it was at intervals, to clean the machine, especially when changing the grinding of one kind of meat to another kind, the power was turned off by pushing the red button, the machine stopped, and this worm, the knives, etc., were removed and washed. After cleaning the worm and other parts they were replaced in the machine to get ready for further meat-grinding. In replacing the worm in the machine it was necessary for the operator to reach his hand and arm into the hopper and take hold of the worm and fit the square end of the same into a square socket. This brought the operator's hand in contact with

the worm or screw, and should the power then be turned on and the worm started to revolving there was great danger of the hand being caught and crushed.

Plaintiff further alleged and proved that on June 24, 1926, he was in defendant's employ, operating the sausage machine in question, and had finished one job of meat-grinding, had stopped the machine and had removed and cleaned the worm and other parts, and was putting the same back in place; that while he was adjusting the worm and fitting the end in the square socket with his hand in the hopper and hold of the worm for that purpose, such machinery being at rest, the same suddenly, unexpectedly and in an extremely unusual manner, and without plaintiff's prior knowledge and without the black button being pressed, started in motion and commenced to operate, with the result that the revolving worm caught and crushed plaintiff's hand and wrist; that plaintiff does not know the cause or causes of the sudden and unusual starting and operation of the machinery, but that the same was due to the negligence and carelessness of the defendant and was not caused by any negligence of the plaintiff; that defendant had sole and exclusive charge and control of said machinery and appliances, and had and now has within its knowledge all the work and workings of said sausage-grinding machine and appliances connected therewith and furnishing and regulating the motive power; that plaintiff's sole duty was to operate said machinery and that he did not have anything to do with the care, keeping or maintaining of such machinery, or the keeping of same in repair and proper working order; that he was not a machinist or electrician and was and is ignorant of the construction and mechanism of such sausage-grinder and the appliances connected therewith; that the work he did on this occasion was done by the direction and under the supervision of his foreman in charge thereof for defendant.

There is no direct charge of negligence other than the general allegation that the sudden and unusual starting of the machinery while plaintiff was adjusting and putting the worm into its connection, without any known cause so far as plaintiff knew, and without pressing the button which was the only way intended or provided for starting it, "was the direct and proximate result of negligence and carelessness of the defendant."

The evidence produced by plaintiff, which, though contradicted in many respects, the jury had a right to and evidently did believe, supported these allegations. The plaintiff testified to his actions in stopping the machinery by pressing the red button on completing the grinding of a lot of meat and onions to made headcheese, and then, at the foreman's direction, removing the worm and parts and giving the whole machine a thorough cleaning with a hose and hot

water; that he was then fitting the worm in place at the bottom of the hopper and inserting the end in the square socket in the usual manner and in the manner he had done this many times before and had been instructed to do it; that suddenly, and without any cause, the machinery started to revolve and operate, catching and crushing his right hand so that later he had to have the same amputated above the wrist. Plaintiff testified that the only way to start the machinery was to press the black button, and was positive that neither he nor anyone else touched the button on this occasion; that he did not know how or why the machine started operating. It is clearly shown by the whole evidence that the motive power to start and operate this sausage machine was electricity from a power motor of defendant brought to the machine over wires constructed for that purpose. This electric power was turned on and off to start and stop the machine by means of pressing buttons in a manner familiar to everyone, though understood by few. It was shown that the pressing of the button would make or break the electric circuit at what is termed a switch. It was also shown that while the pressing of the black button was the only way intended for closing the electric circuit, yet if the circuit was closed in any manner, as by short circuit or different contact or connection than that intended, the circuit or connection being complete, the power would pass to and start the machinery. The defect which brought about this starting of the machinery was not in the sausage-grinding machine but in the electrical or power connection.

Plaintiff's evidence also showed that this was not the first time that the power came on unexpectedly and without pressing the black button and started this machinery without apparent cause. Plaintiff testified that on two or three occasions this had happened within the six months that this particular machine and connection had been in operation. He was corroborated in this by other witnesses. The evidence also is that the foreman in general charge of this line of work was told of this machine starting up without pressing the button, and that he told plaintiff and another workman how to prevent this—by placing a piece of paper between two metal plates in the switch control. There was also evidence that water, and especially salt water in which meat was packed, and which was used more or less about this machinery and switch apparatus, was a good conductor of electricity and might complete the broken circuit without pressing the button. There was also evidence that work had been done by an electrician in order to prevent the starting of the machinery without the button being pressed.

The first insistence of defendant on this appeal is that its demurrer to the evidence should have been sustained, and defendant

incidentally argues that the petition based on the doctrine of *res*  *ipsa loquitur* in a negligence case between master and servant does not state a cause of action—no specific negligence of the master being pleaded or proven. No demurrer to the petition was offered, and plaintiff makes the point that the sufficiency of the petition cannot be tested by a demurrer to the evidence, and that our courts do not favor the practice of challenging the sufficiency of the petition by objecting to the evidence thereunder. However, we here find that the evidence does not aid the petition, and if the facts proven are not sufficient to show a cause of action, then the facts pleaded are not sufficient to state a cause of action, and *vice versa.* The petition, however, is modeled after and substantially follows the petition discussed and held sufficient to state a cause of action in Ash v. Woodward & Tiernan Printing Co., 199 S. W. 994, 997, and in Nelson v. Heinz Stove Co., 8 S. W. (2d) 918; Ferguson v. Fulton Iron Works, 220 Mo. App. 525, 259 S. W. 811, and Taul v. Askew Saddlery Co., 229 S. W. 420. See also State ex rel. Packing Co. v. Reynolds, 287 Mo. 697.

We do not understand that defendant contends that the doctrine of *res ipsa loquitur* never applies to negligence cases where the relation of master and servant exists between the plaintiff and defendant.  The fact that this doctrine is generally and peculiarly applicable to cases between passenger and carrier, and frequently to cases between the person causing the injury and strangers, and less frequently to master and servant, does not argue that it never applies when the latter relation exists. That this doctrine is applicable, where the proper facts are shown, as between master and servant is too deeply imbedded in the law of this State and in general to be made a matter of serious discussion. In fact, the application of this doctrine to a negligence case is not determined by the relation of the parties to each other, but goes to the question of the burden of evidence and method of proving the negligence—a rule applicable to the sufficiency of the evidence to show negligence. The Latin phrase *"res ipsa loquitur"* literally means "the thing itself speaks;" that is, the accident itself, with its attendant circumstances and conditions, is sufficient to show negligence. Under this doctrine, negligence is merely one of the reasonable inferences which the court or jury may make from the accident and the conditions and circumstances surrounding it. It is not a pure presumption of law without any evidence either way, like the presumption of good character or innocence of crime or reasonable care for his own safety which attends every man till the contrary is shown, but rather is an inference from the facts which are shown in the particular case. In 34 Cyc. 1665,

this Latin phrase is defined as "a general way of saying that the circumstances attendant upon an accident are of themselves of such a character as to justify a jury in *inferring negligence* as the cause of that accident." In Cunningham v. Dady, 191 N. Y. 152, 155, 83 N. E. 689, it is said that "the meaning of the maxim is, that the *res*, the thing of itself is *evidence* of negligence," and in Ennis v. Gray, 87 Hun (N. Y.), 355, 361, 34 N. Y. Supp. 379, it is said that "it applies in cases in which the very occurrence itself *imports* negligence." In Jenkins v. St. Paul City Railroad Co., 105 Minn. 504, 510, 117 N. W. 928, this is said: "Ordinarily, the application of the principle does not depend upon the relation between the parties, except indirectly, so far as that relation defines the measure of duty imposed on the defendant. [Griffen v. Manice, 166 N. Y. 188.] There have been cases in which the servant has successfully invoked it against his master." "The presumption referred to is not one of law but of fact. It is, however, more correct and less confusing to refer to it as an *inference* rather than as a presumption; and not an inference which the law draws from the fact, but an inference which the *jury are authorized to draw*." [Palmer Brick Co. v. Chenall, 119 Ga. 837, 842, 47 S. E. 329.]

In 39 Corpus Juris 975, after stating that the application of the doctrine of *res ipsa loquitur* to master-and-servant cases has been at times denied, it is said: "On the other hand, although there seems to be considerable conflict and some confusion among the decisions relative to the application of the doctrine as between master and servant, it is generally held that it does apply in that class of actions in a proper case," citing cases from a large number of states, including from Missouri: Prapuolenis v. Goebel Constr. Co., 279 Mo. 358; Klebe v. Parker Distilling Co., 207 Mo. 480; Ferguson v. Fulton Iron Works, 220 Mo. App. 525, 259 S. W. 811; Taul v. Askew Saddlery Co. (Mo. App.), 229 S. W. 420; St. Clair v. St. Louis, etc., Railroad Co., 122 Mo. App. 519; and many other cases might be cited. This doctrine, says the text, applies "especially where a statute has abolished the fellow-servant rule. At any rate, in the absence of a statute requiring a different ruling, the inference of negligence of the master is deducible, not from the mere happening of the accident, but from the attendant circumstances."

In Capehardt v. Murta, 165 Mo. App. 55, 63, the court said: "Where negligence itself thus appears as a reasonable inference from the facts and circumstances before the jury, it may be found therefrom to exist, wholly aside from the presumption above mentioned. In such cases, the facts and circumstances affording reasonable inferences to the effect that defendants breached their duty are sufficient to cast the onus of exculpation from fault upon the adverse party and make a prima-facie case."

Speaking further of the doctrine in question, 39 Corpus Juris, 980, further says: "The doctrine does not dispense with the rule that the party who alleges negligence must prove it; on the contrary, it only determines the *method* of proving it, or what shall be prima-facie evidence of negligence in a certain class of cases."

As to when the doctrine of *res ipsa loquitur* applies, 39 Corpus Juris, 976, says: "The doctrine is applied or the *inference* is drawn only when the thing or condition causing the injury is under the exclusive control and management of the master, and in ordinary experience the accident does not usually happen without negligence on the master's part. . . . and what inference can reasonably be drawn from facts is often difficult to determine; and *if the accident is not of so uncommon a character as to furnish evidence of negligence* on the part of defendant, the doctrine does not apply. It is sometimes said that the inference of negligence is allowed from necessity when the causes of an injury cannot be clearly shown by the injured party and ought to be known to the employer, and that the inference is not otherwise drawn."

In 18 Ruling Case Law, page 628, section 124, we find this statement of the law: "The conflict has largely if not entirely subsided in favor of an unlimited recognition of the doctrine *res ipsa loquitur* as applicable to cases of injuries to employees, provided the facts and circumstances are such as to bring the particular case within the scope of the doctrine as is generally understood. Mere proof of the fact that an employee has been injured while engaged in his duties certainly is not sufficient to make a prima-facie case for recovery. If it appears that he has not produced material evidence easily within his reach the mere proof of the injury does not raise an issue which requires rebuttal by the employer. But where the offending instrumentality appears to have been under the control and within the superior knowledge of the employer, justice requires that he be called upon to explain the occurrence—the doctrine *res ipsa loquitur* applies. The broad rule is that the mere happening of an accident causing injury is evidence of negligence whenever the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care. . . . The doctrine *res ipsa loquitur* has been held to apply to injuries caused by a scaffold falling, the unexplained starting of machinery, etc."

There are two reasons why the doctrine of *res ipsa loquitur* is applicable to the facts presented in this case: (1) The courts of this and other states unite in holding that the *automatic* and abnormal *starting of a machine* when it ought to remain at rest is evidence of negligence on the part of the master, and if the further facts appear that the installation, upkeep and duty to inspect and repair the machine and ap-

pliances are with the master, and not with the injured servant, who is ignorant of and without opportunity to know the mechanism and how same is operated, and when the defect and cause thereof are peculiarly within the knowledge of the master, then the doctrine mentioned applies. [Blanton v. Dold, 109 Mo. 64; Ash v. Woodward & Tiernan Printing Co., 199 S. W. 994; Nelson v. Heinz Stove Co., 8 S. W. (2d) 918; Kitchen v. Schleuter Mfg. Co., 20 S. W. (2d) 676; Uhl v. Century Elec. Co., 295 S. W. 127; Lowe v. Fox Laundry Co., 274 S. W. 857; Heckfuss v. American Packing Co., 224 S. W. 99; State ex rel. Packing Co. v. Reynolds, 287 Mo. 697; Eckhardt v. Wagner Electric Co., 235 S. W. 117; Cochrell v. Langley Mfg. Co., 5 Ga. App. 317, 63 S. E. 244; Cullalucca v. Plymouth Rubber Co., 217 Mass. 392, 104 N. E. 956; Dagis v. Walworth Mfg. Co., 213 Mass. 524, 100 N. E. 620; Rogers v. Portland Lbr. Co., 54 Ore. 387, 102 Pac. 601, and 103 Pac. 514; Petrarca v. Quidnick Mfg. Co., 27 R. I. 265, 61 Atl. 648; Gammage v. Gamer Co. (Tex.), 209 S. W. 389.] (2) The plaintiff's injury was due to some defect in the appliances furnishing the power rather than in the meat-grinding machine, and this doctrine is peculiarly applicable where, owing to the subtile and dangerous character of an electric current, the injury to the servant is due to a *defective electric appliance* furnishing or controlling power or light. [Ferguson v. Fulton Iron Works, 220 Mo. App. 525, 259 S. W. 811; Taul v. Askew Saddlery Co., 229 S. W. 420; Arkansas Light & Power Co. v. Jackson, 166 Ark. 633, 267 S. W. 359; Neary v. Georgia Public Service Co., 27 Ga. App. 238, 107 S. E. 893; Goddard v. Enzler, 123 Ill. App. 108, affirmed 222 Ill. 462, 78 N. E. 805; City of Decatur v. Eady, 186 Ind. 205, 115 N. E. 577; Cochran v. Young-Hartsell Mills Co., 169 N. C. 57, 85 S. E. 149; Haynes v. Raleigh Gas Co., 114 N. C. 203, 19 S. E. 344; Turner v. Southern Power Co., 154 N. C. 131, 69 S. E. 767; Leiferman v. White, 40 N. D. 150, 168 N. W. 569.] See in this connection the classification of cases to which this doctrine applies in the notes to 39 Corpus Juris, 977, where citation of many other cases will be found.

In defendant's reply brief filed herein we find this statement:

"In answer to our contention that the plaintiff's petition and evidence do not make out a case for the application of the doctrine of *res ipsa loquitur* between master and servant, counsel have set forth no new learning on the subject. They rely upon Blanton v. Dold, 109 Mo. 64; Eckhardt v. Wagner Elec. Co., 235 S. W. 117; Ash v Woodward & Tiernan Printing Co., 199 S. W. 994; Meade v. Water & Steam Supply Co., 318 Mo. 350, 300 S. W. 515. and Kitchen v. Schleuter Mfg. Co., 20 S. W. (2d) 676.

"We are aware that the cases relied upon by counsel for the respondent, especially the later ones, support counsel's contention in this case. It is for that reason that we have seriously asked the court to reconsider the application of the doctrine of *res ipsa loquitur* to master and servant cases. In none of the cases relied upon by respondent has the matter been gone into with the thoroughness which the situation justifies. *The application of the doctrine should be restricted to those cases wherein the happening of the accident and the circumstances themselves bespeak negligence.* To do otherwise will make the master an insurer and lead to unjust and ridiculous results. It was never the intention of the court originally to extend the doctrine as now contended for by counsel for respondent. Thus, as pointed out in our original brief, Judge ELLISON, in Hamilton v. Railroad, 123 Mo. App. 619, clearly points out that Blanton v. Dold, 109 Mo. 64, was decided on the theory that in order to make the master liable by proof of the occurrence, 'it must be such an occurrence "as carries proof of negligence on its face."' There were circumstances, as held by Judge BARCLAY in Blanton v. Dold, as indicated negligence in addition to the mere fact of the fall of the culvert."

Defendant has pressed on our attention the cases of Hamilton v. Railroad, 123 Mo. App. 619, 623, Removich v. Construction Co., 264 Mo. 43, and Stewart v. St. Louis, etc., Ry. Co., 30 S. W. (2d) 1000, 1004, as holding a different doctrine than contended for by plaintiff in this case. We have examined these cases with care, but do not find them inconsistent with our views in this case in holding that the petition states facts sufficient to constitute a cause of action, and that a demurrer to the evidence should not have been sustained, since it is sufficient to prove the facts alleged. Nor do we find any essential conflict in the cases just mentioned and those later cases which defendant concedes support plaintiff's contentions.

The distinction in the application of the doctrine of *res ipsa loquitur* which defendant insists on as between carrier-and-passenger cases and master-and-servant cases is that in the former a pure legal presumption of negligence arises from the mere fact that the passenger is injured, while in the latter there is no such presumption, but the accident with its attendant circumstances must be such that the triers of fact will be justified in drawing an inference of negligence therefrom. Thus in the case of Hamilton v. Railroad, supra, the court said: "We think that there is good reason for applying the rule to the latter class (passenger) and not to the servant. The passenger does not assume risk, while the servant does. The instances of non-liability for injury to a passenger (in the absence of contributory negligence) are rare. The instances of liability to the servant are not nearly so frequent. The passenger is helpless and

he necessarily places himself in the carrier's hands. He knows nothing of the carrier's machinery, nor his methods, and it is impractical for him to ascertain. Whereas the servant is a part of the carrier's service. He has opportunity in a vastly greater degree than the passenger to ascertain the causes which led to the injury. The greater part of what we have just stated as to a passenger applies with equal reason to a stranger who may suffer injury; and so we find the courts extending the presumption to him in aid of his evidence against the party he charges with the wrong. The foregoing considerations have occurred to us as good reasons for a distinction between classes of persons. . . . There is, however, authority based on the best of reason, showing that the servant's case may be made out by mere proof of the occurrence which caused the injury in those instances where the occurrence itself, without the aid of a presumption, shows negligence. In the case of a passenger, as we have seen, the occurrence itself may not show negligence and the presumption comes to his relief. But, in the servant's case, if the occurrence is of that nature, which, of itself, shows negligence without the aid of a presumption, he may, as just stated, make a case by showing the occurrence only. . . . *The occurrence shown may be of that nature which could not in any degree of probability have happened without a negligence cause.* Its proof is tantamount to the direct and affirmative proof of negligence. We think it would *not be necessary* that the occurrence should be such as could not *by any possibility* have happened without a negligent cause, for that would be getting *beyond the requirement of evidence, especially in civil cases.*"

The court then reviews a number of Missouri cases, including that of Blanton v. Dold, 109 Mo. 64, which we will mention later, and then says: "We do not believe it ought to be said that any of these cases afford ground for the position that a servant may be aided by a presumption in making out his case. It is necessary that he produce tangible evidence of his master's negligence, and this, as we have just seen, the occurrence itself may in some instances supply for him."

The reasoning of the court in Removich v. Construction Co., 264 Mo. 43, is along this same line.

The difference or distinction which the court speaks of in the two classes of cases, we think, will be found in the difference in the facts rather than in the rule of law applicable thereto, and that in all cases, whether that of passenger and carrier or master and servant, the doctrine of *res ipsa loquitur* means and requires that the *res*—the accident and attendant circumstances—speaks or supports an inference of negligence. Thus in the leading case of Blanton v. Dold, 109 Mo. 64, the plaintiff was injured in operating a "blood mill" for grinding dried blood in a packing house. That machine was so con-

structed that its starting and stopping was governed by moving a lever, but on this occasion it started suddenly without the lever being moved. The court applied the doctrine of *res ipsa loquitur*, and said: "It is sometimes a close question to determine what *inferences from the facts* may reasonably be drawn; but it is enough for our present purpose to say that we are of the opinion that where such a machine as this starts into motion, entirely out of its usual manner of its operation, as shown by the case at bar, its action affords prima-facie *evidence* of some *want of care* in its original construction or the condition, calling for explanation from the party responsible therefor."

In Eckhardt v. Wagner Electric Mfg. Co., 235 S. W. 117, the plaintiff was injured while he was operating a cutting press by reason of the crosshead suddenly and without apparent cause falling on and crushing his hand. This court en banc there said: "In view of the numerous rulings in this State in which the doctrine of *res ipsa loquitur* has been applied in cases between master and servant, it is perhaps not necessary to discuss that question. Especially is this true in cases where the injury to the servant was alleged to have been caused by some appliance peculiarly within the knowledge and control of the master, of which the servant was ignorant. [Prapuolenis v. Construction Co., 279 Mo. 358, 367.] The petition authorizes the invoking of the doctrine of *res ipsa loquitur*, or that negligence, like any other fact in issue, may be established as well by *reasonable inference from other facts* as from more direct means of proof. The plaintiff attempted, as directed by the defendant, to operate a machine with the construction and operation of which, according to his testimony, he was not familiar. The crosshead of same fell, and he was injured. . . . What inferences may be reasonably drawn from facts it is often difficult to determine. We have more than once held, however, that where a machine starts of its own motion, entirely different from its usual manner of operation, as at bar, such fact affords prima-facie evidence of such want of care in construction or condition as to call for an explanation from the defendant. [Blanton v. Dold, 109 Mo. 64.]"

This statement of the law of *res ipsa loquitur* from Blanton v. Dold, supra, is quoted with approval in the case of Ash v. Woodward & Tiernan Printing Co., 199 S. W. 994, where the plaintiff was injured by the sudden starting of a paper cutting machine which caught his hand. This machine was properly started and stopped by an operating lever only, but on this occasion started automatically without the lever being moved. The plaintiff had no knowledge of the mechanism of the machine except how to start and stop it, and was not charged with its maintenance, inspection, or keeping it in repair. The doctrine in question was applied both as to the pleadings

and evidence. The court cited a large number of cases in this State following and approving this doctrine, and said: "In our opinion, the overwhelming weight of authority, in cases like the one at bar, in other jurisdictions, are in accord with the views expressed by this court in Blanton v. Dold, supra." The court cites many cases from other states so holding.

In the case of Nelson v. Heinz Stove Co., 8 S. W. (2d) 918, the plaintiff, an employee of the defendant, was injured by the sudden and unexpected starting up of a punch press which he was operating. It was conceded by this court that the doctrine of "presumption of negligence" or *res ipsa loquitur* applied to the facts and that the burden of rebutting the inference of negligence was upon the defendant. The court approved instructions in that case telling the jury that the case was bottomed on defendant's negligence and that unless the jury found that defendant was negligent "in connection with the maintenance, operation and control of the machine," to find for defendant. The court then said: "Conceding that under the pleadings and proof this was a *res-ipsa loquitur* case and that the doctrine of presumptive negligence on the part of defendant applied, it cannot be said that plaintiff did not have the burden of proving in the first instance a state of facts from which the presumption would arise that defendant was negligent. [Bond v. Railway Co., 315 Mo. 987.]" It is evidence that the term "presumptive negligence" means the same thing as inference of negligence drawn from the facts proven.

In Klebe v. Parker Distilling Co., 207 Mo. 480, this court, while denying the application of this doctrine to the case then in hand, quoted the rule of law that "where the means and instrumentalities employed by the master are peculiarly within his knowledge and under his control and he is in a better position to explain the cause of the accident than the injured party, then the burden of proof rests upon him to disprove the negligence," and then said: "This broad rule, however, . . . is limited to that class of cases where it appears that the accident was of that kind which, according to *common experience*, does not usually occur except from some fault of the master himself or of his servants, or from some imperfection in the institution [of the machine] or its appliances. . . . While there may be stronger reasons for applying the rule to common carriers of passengers than to any other class of persons, yet we are not persuaded or prepared to hold that there are no good reasons for holding the rule does not apply to master and servant in proper cases, nor to hold that such a rule does not exist; but, upon the other hand, we think that where the reason for the rule exists for its application between master and servant, it applies with equal force and effect as it does to common carriers."

In Ferguson v. Fulton Iron Works, 220 Mo. App. 525, 259 S. W. 811, the St. Louis Court of Appeals applied this doctrine to an injury received by the unusual and erratic operation of an automatic air hammer, and said: "In Missouri it is now established that, as between master and servant, the rule applies in many instances. The rule of *res ipsa loquitur* may be invoked in many master and servant cases as it is applied in this State when the means and instrumentalities used by the servant are peculiarly within the knowledge and under the control of the master, and under such circumstances the master is in much better position to explain the cause of the accident than the injured party." This is a well considered case and cites many cases both from this and other jurisdictions.

In the late case of Meade v. Missouri Water & Steam Supply Co., 318 Mo. 350, the servant was injured by the sudden and unexpected fall of an elevator in which he was riding and which was intended to so operate as to automatically stop and remain stationary on reaching the second floor of the building and not descend except on pulling a cord for that purpose. On this occasion it descended or fell without the cord being pulled and plaintiff was unable to allege or prove the specific cause of its doing so. This court, after reviewing a large number of cases, including Hamilton v. Railroad, supra, and Removich v. Construction Co., supra, said: "A prima-facie case is made only where the accident is of a kind which does not ordinarily occur, except from some fault of the master himself or of his servants, or, from some imperfection in the institution of the machine or appliance in question, and only where also the nature and circumstance of the occurrence indicate that the injured party is not in a position to explain the cause, but the party charged, by reason of his greater opportunity to know, is thereby in a position to explain it and to show himself free from negligence, or, at least to overcome the presumption held to have arisen by reason of the nature and circumstance of the occurrence resulting in the injury."

The distinctive features of the doctrine of *res ipsa loquitur* are that it relieves the plaintiff of pleading and proving specific negligence, but not of pleading and proving general negligence, that is, the accident and such attendant circumstances as will support an inference of negligence which the jury must find; and when this is done the burden of rebutting the inference and preventing the jury so finding is on the defendant. As said in Prapuolenis v. Construction Co., 279 Mo. 358, 367, this doctrine "is applied between master and servant, where the injury to the servant is caused by some appliance peculiarly within the knowledge and control of the master, of which the servant is ignorant and with which he had nothing to do." This same view of the law was taken and applied by the Kansas City Court of Appeals in Taul v. Askew Saddlery Co.,

140

229 S. W. 420, where the injury was received in the operation of a power press operated by electricity. The machine started automatically and without apparent cause. This court in the more recent case of Kitchen v. Schleuter Mfg. Co., 20 S. W. (2d) 676, in a case quite similar as to its facts, again reviewed the Missouri cases on this subject, including Hamilton v. Railroad and Removich v. Construction Co., and again adopted the rule of *res ipsa loquitur* as between master and servant. There is small reason, therefore, for appellant's insistence that this court has not given this question the serious and thorough consideration which it deserves. Few questions have received more thorough and serious consideration.

We will grant, therefore, the appellant's insistence that, as between master and servant at least, the doctrine of *res ipsa loquitur* should be limited to cases where the accident and its attendant circumstances speak negligence, or, as is said, "it must be such an occurrence as carries proof of negligence on its face." However, the courts of this and other states are, we think, practically unanimous in holding that when a somewhat complicated machine and the power operating same are furnished by the master for the servant's use in doing the master's work, and is so constructed as to be operated and controlled by the servant by a simple mechanical device, such as a lever or switch button, and which is not intended to start or stop except on the servant's use of such device, and the servant has no knowledge or means of knowledge as to its operation other than the starting device and is not charged with keeping it in repair or good operating condition, and such machine does start to operate automatically and without apparent cause, or in a different manner than intended, causing the servant's injury, then such accident and its attendant circumstances do speak negligence and it is such an occurrence as carries proof of negligence on its face and casts on defendant, having peculiar knowledge thereof, the burden of disproving its negligence. Such is this case. We do not hold, however, as defendant would have us do, that plaintiff, in order to come within the rule of *res ipsa loquitur*, must show such a state of facts surrounding the accident as excludes every reasonable hypothesis except the master's negligence. The attendant facts must be such as to raise a reasonable inference of defendant's negligence, but not necessarily such as to exclude every other inference. The jury must draw the inference of negligence from the facts proven, and it must be a reasonable one, but the rule applicable to circumstantial evidence and reasonable doubt in criminal cases does not apply. As said in Dyer v. Sutherland Contracting Co., 321 Mo. 1015, 13 S. W. (2d) 1056: "This evidence would clearly warrant a jury in drawing the inference that the piece of timber which struck appellant fell from the platform.

Such inference is supported by strong probability, and in order for it to be allowable, it is not necessary that the evidence exclude every other possible hypothesis, as, for example, that a careless workman dropped the timber.'' On the other hand, the question of negligence must not be based on mere speculation or conjecture. We, therefore, overrule appellant's contention that the doctrine of *res ipsa loquitur* does not apply to the pleadings and evidence in this case.

The only other error complained of is the refusal of the court to give defendant's Instruction C. As we have heretofore pointed out, in a case to which the rule of *res ipsa loquitur* applies and in which plaintiff has made a prima-facie case, the burden is cast on the defendant to rebut the inference of negligence on its part and to show that it was not negligent in respect to the matter complained of. The defendant undertook to do this. It does not claim, and could not well do so, that its evidence along this line was such as to compel a finding for it. Plaintiff's evidence tended to show that this was not the first time this sausage mill had automatically started to operate without the starter button being pushed, and that defendant's foreman had been informed of this defect, had informed plaintiff how to prevent this by inserting a piece of paper between two brass plates connected with the switch, and later had informed plaintiff that it was all right and he need not take this precaution. When we remember that it was defendant's duty to furnish plaintiff with a safe place in which, and with safe machinery with which to do his work, which duty is continuous and non-delegable, the question of defendant's negligence was one for the jury. Of course defendant was entitled to proper instruction submitting this question. In plaintiff's principal instruction the jury was required to find, not only the facts bringing the case within the doctrine of *res ipsa loquitur*, but to find from such facts that the machine was in fact caused to start by reason of some negligence on defendant's part. At defendant's instance, the jury was instructed· ''that the mere fact that plaintiff was injured does not entitle him to a verdict; that he must prove that the machine suddenly started while his hand was in the hopper,'' etc. Defendant's refused Instruction C undertook to cover a complete defense along this line and directed the jury to return a verdict for defendant on a finding of the facts stated in the instruction. To be correct, an instruction in such form must enumerate and require a finding for defendant on ·every reasonable ground of negligence on its part. The trouble with this refused Instruction C is that by going into particulars, it is too narrow. In effect, it tells the jury that defendant was not negligent if (1) it purchased the sausage machine from a reputable dealer, and (2) that at the time of its installation and

142

at the time of plaintiff's injury there were no *visible* defects in same, and (3) that the defects, if any, were of such character that defendant could not discover same with ordinary care, and (4) that such machine had not been in use long enough for defendant to discover the defects, if any, by ordinary care.

As to the first requirement of this instruction, there is nothing to show from whom defendant purchased the sausage machine. What defendant meant was that it purchased the electric switch and power control from the General Electric Company, a reputable manufacturer. The defect, however, was more likely to be in the installation and upkeep of the appliances rather than in the appliances themselves. As to the second requirement, it would clearly not be sufficient if the appliances were free from *visible* defects since the duty of inspection and discovery of latent defects rested on defendant. The instruction was at least misleading in ignoring the defendant's duty in this respect. [Ash v. Woodward & Tiernan Printing Co., 199 S. W. 994, 999; Klebe v. Parker Distilling Co., 207 Mo. 480, 487.] As to the last requirement (4), the machine had been installed and in use at least six months before this accident occurred and it is hardly a jury question as to that being a sufficient time to discover defects in its operation. An instruction in general language covering such defense, and not restricting the jury to such narrow compass in determining this question, received the approval of this court in Nelson v. Heinz Stove Co., 320 Mo. 655, 8 S. W. (2d) 918, 920. We hold, therefore, that the case should not be reversed for failure to give this instruction.

The only other question in the case is that the verdict and judgment are excessive. The verdict for plaintiff was for $25,000, and the trial court required a *remittitur* of $4,000, reducing the judgment to $21,000. Defendant insists that the amount is still excessive and that it should be reduced by at least $10,000 more. The evidence shows that plaintiff was a common laborer, forty-one years of age, and earning about $150 per month. The result of the injury was that he lost his right hand. No other permanent injury could or did result from the accident. The plaintiff was shown to have suffered much pain from the fact that at the first operation the surgeon in charge attempted to save a part of the hand. This proved unsuccessful and plaintiff had to undergo two or three further operations before it was finally found necessary to amputate the arm just above the wrist. On comparing the amount of damages in this case with the amount allowed in other cases, such as Rose v. Railroad, 315 Mo. 1181; Wagner v. Construction Co., 220 S. W. 890; Parks v. United Railways Co., 235 S. W. 1067; Wolfe v.

Payne, 294 Mo. 170, 241 S. W. 915; Leighton v. Davis, 260 S. W. 986; Brock v. Railway Co., 266 S. W. 691; Schroeder v. Wells, 298 S. W. 806, and Henry v. Railroad Co., 282 S. W. 423, where the injuries were similar to those in the present case, we could well hold that $15,000 would be the limit to the damages in this case. However, on account of plaintiff's large expenditures for hospital fees and medical attention and his unusual suffering both in the manner of his injury and in attempts to cure the same, this amount should be increased to $17,000. If, therefore, the plaintiff will within ten days enter a *remittitur* in this case for the further sum of $4,000, the case will be affirmed and judgment entered for $17,000 as of the date of the original verdict; otherwise, the case will be reversed and remanded for new trial. It is so ordered. *Ferguson* and *Hyde CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.